Appellant. Ms. Brody for the Appellant, Mr. Ewing for the Appellee. Good morning. Good morning, Your Honors. May it please the Court, Rebecca Brody, Counsel for Appellant Brandon Laureys. I'd like to begin by addressing the jury instruction issue and then I will move on to the failure to call the experts. The government's portrayal of the 2422B enticement law at the time of Mr. Laureys' trial is wrong. And the government's characterization of trial counsel's understanding of that law is wrong. Even in what the government has termed the pre-hyped world, a minor had to be the object of the enticement inducing persuasion or coercion. Murrell, Lee, Spurlock, and Nestor all required a minor to be the object of the inducement. Although Murrell held that you could induce a minor through the intermediary by causing him to engage in the sex act, the object of the inducing was the minor. But Ms. Brody, here don't we have evidence of just that? Didn't the evidence show that Mr. Laureys proposed that Jim bend the 9-year-old's will even within the meaning of hype? When Laureys was conversing with Jim, he wrote to Jim, train the little girl, make sure she wants to do it, let her meet me and everything first, start with just letting me watch her and you watch her until she feels more comfortable. So to the extent that the 9-year-old is, we assume that he thinks she's real, he wanted Jim to entice her to participate in sex with Laureys, no? It is possible that there is that language of attempting to persuade the minor, but we look to Hype where the court held that where the jury has decided the case under an improper legal theory, there must be a reversal. But that's not the right question we have here today. The instruction was clearly wrong under Hype, but the question is whether counsel was ineffective, isn't it? Yes. In arguing, and at the time he argued the case, there was no circuit precedent, and the only precedent was to the contrary. Was that the Fifth Circuit case? I'm sorry, Judge, I did not understand your last sentence. Is that better? Yes. What I'm saying is that at the time this came up, there was no Hype, there was no circuit law at all, and the only circuit law went the other way. So isn't the question whether or not given that, counsel was ineffective? Yes, the question is given that and given Judge Robertson's questions. I don't see how Judge Robertson's questions help you at all. Set those aside for a minute. Okay. What's the best argument you can make for the proposition that he was ineffective and not arguing what you just so clearly stated is the right interpretation of the statute? My argument is that under the case law at the time, you had to induce a child, and the written instruction, the court's oral instruction, the government's explanation of the instruction, and trial counsel's statements at Mr. Lurie's trial allowed for prosecution, allowed for conviction for an attempt to persuade an adult. Right. The jury was told over and over and over again to look for an attempt to persuade the adult. Right. And that's a completely different act than attempting to bend the will of the child. If we assume that it was below the standard for counsel, that it was ineffective for counsel to have failed to proffer that kind of argument, what is the prejudice here? The prejudice here is that the jury decided the case under an improper legal theory. And I... Okay. I look at the chat in Haidt, which is... You have to say, under an error of law. Yes. Under an error of law. And I look at the chat in Haidt, which is, in my opinion, far more egregious than the chat in Lurie's, where the defendant suggests giving the minor alcohol, Benadryl... It may be more egregious, but I think the question is, even narrowing the correct understanding of 2422B to require... I mean, Judge Brown, dissenting in the original panel, had a theory that was narrower than what our court in Haidt adopted. She said, we don't even know, and counsel should have argued, we don't know whether the statute requires that the enticement be direct through the Internet to a child. And if this court had adopted that view in Haidt or some other case, or in Mr. Lurie's case, then there's clear prejudice, because nobody contends that the communication was through the Internet with a child directly. So then the question becomes, can the statute be violated if the defendant is communicating through an adult intermediary? And in Haidt, we say yes. Although, as you point out, we said yes, but only where the adult intermediary is effectively the agent of the defendant and is being asked to bend the will of the minor. Not where the adult intermediary is merely arranging or causing the minor to become available for sex. And my question is, given the record in this case, isn't the communication replete with evidence that Mr. Lurie's was asking Jim to entice the 9-year-old, the theoretical 9-year-old? And therefore, where is the prejudice? Because even though the jury instruction should have been narrower, what in the facts could the jury have erroneously relied on to find the conviction that requires a new trial? I think the prejudice lies in a couple of areas. One, if the jury believed that Mr. Lurie's didn't believe there was a child there, then clearly there's no violation of the statute. But we don't know whether the jury convicted Mr. Lurie's because they believed he was attempting to persuade the adult, which is what they were told over and over and over again throughout the trial. And looking at Judge Robertson's... I'm sorry, but if he was attempting to persuade the adult to entice the child, then there's still a conviction, right? Yes, if he was attempting to persuade the adult to entice the child, but that is not what the jury was instructed. I'm just asking about the evidence. Were there any of the evidence that the jury could have relied on? What's the finding that they could have made based on this evidence that fell in the cause or arrange box rather than in the entice, coerce, induce or persuade box? Well, they could have found that he was just engaging in fantasy chat and did not believe a child existed. But that would have caused them to acquit? Correct. And they didn't? No, they didn't. They could have found that he was not attempting to entice the child. He was attempting only to entice the adult. And that would have caused them, even under the jury instruction that was given in Lurie's trial, that would have caused them to acquit. So they didn't do that. No. So what might they have, in fact, done in this case that they would have been steered away from by a correct instruction? I believe that under a correct instruction, they may have acquitted. And if I look at Judge Brown's dissent and Judge Robertson's comments during the trial, there is indication that the evidence that he believed a child was there was weak. And given a correct instruction, they may have also found the same, pardon me, given a correct instruction, they may have also acquitted. Let me ask you, you said repeatedly the jury was told. Is that because you're saying during closing argument, the government was arguing that the jury needed only to find an attempt to persuade the adult? Yes. And in the written instruction. And at trial counsel's Rule 29 argument, where he stated that he agreed. Well, I'm focusing on your statement that the jury was repeatedly told. Yes. So it's where to be found? In the opening statement of the prosecutor? In the closing statement of the prosecutor, which I believe is JA241. In the written jury instruction? In trial counsel's Rule 29 argument? Well, the jury didn't hear that. In trial counsel's direct examination of Mr. Lorre's? The question throughout that trial was whether or not Mr. Lorre's was attempting to persuade an adult. And I'll just read one quote. The government states, citing to Morell, and in this context, that is referring to persuading the adult or attempting to persuade the adult by prevailing upon the adult to let the defendant have sexual access to the child. And that's the closing argument? This is the closing, yes. Where is that? JA241? I believe it's at JA241. I don't think so. Okay. I can double-check while the government. All right. Did you have other points you wanted to argue? Yes, I did. And then I also wanted to say that Nestor out of the Third Circuit and Spurlock out of the Eighth Circuit applied 2422B to cases where the adult intermediary was a tool for the defendant to ultimately induce the minor. The government also takes the position that trial counsel was conscientiously grappling with the application of 2422B to adult intermediaries. But trial counsel's statements at trial demonstrate otherwise. Well, let me ask you. You said you wanted to start with the jury instruction. Yes. Did you want to talk about the experts? Sure. Okay. I can go to that. I just want to apologize. I do see where you're going on page 241, where the government is arguing that they need to entice or persuade the minor or persuade an adult intermediary. The evidence against Mr. Lorries was, as Judge Robertson stated, razor thin, but it was also heavily prejudicial. It was this combination. Well, I thought the judge was referring to count two, the transportation. Our reading is that he was referring to the travel. That's what I meant. Okay. It was this combination that made the expert testimony, both that of Dr. Berlin and Dr. Butters, crucial, not just for the substance of the testimony, but for three essential functions it would have played at trial. How do you respond to Judge Henderson's comments about Dr. Berlin's testimony, the effect? Yes. We take the position that had Dr. Berlin testified, there would have been no need to call upon Mr. Lorries to testify, not to testify. He would have testified, but that he would not have had to testify about his mental health, about his treatment. But I think the point is that when you look at what Dr. Berlin testified to on remand, doesn't that underscore the point Judge Henderson was making? No. The significance of Dr. Berlin's testimony was that fantasy chats exist, and it also took the explanation of pedophilia, which is highly prejudicial, out of Mr. Lorries, who had a horrible testimony, a horrifying way of describing it, and it put that testimony into the hands of Dr. Berlin, who provided a scientific, authoritative, non-offensive explanation of that same diagnosis. So had Dr. Berlin testified, Mr. Lorries' testimony would have been shortened. It would have been limited. And even the damaging parts that would have been Well, his direct testimony, who knows about his cross? Who knows about his cross? Yeah. But we take the position that Dr. Berlin's testimony would have helped to explain that behavior to the jury. Why did you say that Lorries necessarily would testify had Berlin been available? I thought your briefing said his testimony would have been unnecessary. I'd say that parts of his testimony would have been unnecessary. The mental health parts would have been unnecessary. The intent part would still probably have taken place, but the mental health aspects, which are large parts of his testimony, are about his mental health. Those would have been much better provided by an expert. But Berlin said very clearly that even if he had more time, he couldn't He didn't think a Let me find his language here. He says, even with time to review the additional information, I doubt there could be a successful mental health defense in this case. Correct. Dr. Berlin says he's unable to provide a mental health defense. This is in response to trial counsel's request for a diminished capacity defense. But he also says he couldn't testify that your client didn't have the ability to form a specific intent. No. And we're not making the argument that Dr. Berlin would have been able to provide a mental health defense. We make the argument that, as Judge Robertson found and Judge Brown found, the evidence was extraordinarily weak in this case, that Mr. Lorries believed a minor would be at that meeting. And with expert testimony to help curtail some of the prejudice of his diagnosis and his words, the trial Do you think it matters under the law when Mr. Lorries might have anticipated Jim would give him access to the child? If the jury thought, no, Mr. Lorries didn't think that Jim would have the child there that night. I'm just talking here about the 2242B. But I'm just going to, you know, start to foster this relationship because I think that we're going to warm up to something where he is going to give me access. Is that enough or not? On the travel? 2242. Oh, the enticement. I think there are arguments that could go either way on the enticement. The travel, definitely not. I've never seen any case that applied the travel statute when there was no belief at that meeting. But the enticement, you know, I believe that there are arguments that can go either way. Now, what would be your argument that there would have been no lawful basis to convict if all Mr. Lorries is doing is kind of investing in a potential future availability because he thinks Jim does have access but isn't going to bring her to that meeting? I don't know if you can get to the substantial step with something that's so attenuated. And how are the objections you're raising now, how do they bear on that? Or do they? The objections that we're raising now, as far as Mr. Lorries, I'm sorry, I don't understand the question. Well, I was positing that perhaps it would be disruptive of a conviction if all that was shown was that Mr. Lorries thought he was investing in a potential future opportunity, not an opportunity that night. And I wonder if any of the errors that you're raising, you know, would make, whether that weakness of the case is further aided by the errors that you're raising. Would Dr. Berlin have made any difference on that? Would the jury instruction? Or is it just something that should have been raised and wasn't raised and nobody pursued it and the jury wasn't convinced anyway? Well, we did address it in the context of the travel. And we said that even if you believe that Mr. Lorries believed a minor would be at some meeting, it's not enough to convict under 2423. We've never seen a case that has applied it there. And I haven't looked at the... You lost on that. The jury found otherwise. So the jury must have found that he thought that she would be there that night. Well, we don't know because the jury convicted him under an improper legal theory. The jury was not on the travel count. Oh, correct. I'm sorry. We don't know because the jury also was deprived of any expert testimony. It was it could have just been prejudiced by Mr. Lorries testimony and his pedophilia diagnosis. All right. Why don't we hear from the government? We'll give you a couple of minutes on rebuttal. Good morning. Good morning. May it please the court. James Ewing for the United States. This court should affirm the judgment of the district court because none of appellant's claims meet either deficient performance or the prejudice prongs of Strickland. Turning first to the jury instruction claim, as this very court said on direct appeal in this case, the jury instructions that were given in this case, quote, contradicted no precedent of this court or the Supreme Court. Yeah, but they were obviously wrong. Correct? Your Honor, there... I mean, this... We don't see very many clear statutes on this court, but this one's pretty clear. It criminalizes persuasion or inducement of a minor. It says that's what it says. What difference does it make that, I mean, when it's that clear, I mean, in height, it took us, what, three sentences to decide that's what it meant? Maybe a paragraph. I just, I don't see how, I don't see how it makes any difference that there wasn't a circuit precedent at the time or that other circuits may have gone the other way when the error was so obvious. Your Honor, I respectfully disagree that the error was obvious, and here's why. Tell me why. In 2010, when this case was tried... Let's just look at the statute. Just the statute. Yes, Your Honor. Persuades, induces, or entices any individual who has not attained the age. That's what it says. Just tell me from the language of the statute alone why it's not obvious. Sure, Your Honor. The difference, really the disagreement between Murill and Hornaday in the 11th Circuit that were on the books in 2010 and height and Judge Brown's dissent in this case on direct appeal was regarding the definition of the term induce and whether that, the term induce included the concept of... But it's clear the inducement, whatever inducement means, it has to be the child. Absolutely, Your Honor. And I want to take on this idea that these jury instructions in this case were not in concert with Murill. They were, and let me explain to you how. My only point, that doesn't make any difference. Your Honor, I believe it does make a difference because the aspect of height that wasn't obvious. Because height, of course, says you have to persuade, induce, entice, coerce a child. You can do it through an adult intermediary, but the distinction... of somebody, right? You either have to induce the child or you have to induce the adult to induce the child. You can't do what the instructions in this case did. Well, here's what the instructions in this case said. And I'm looking at Joint Appendix page 352, which were the written instructions, and Joint Appendix 328, which were the instructions that were actually given on the record. What they said was an attempt is intended... the requirement under 2422 is an attempt to intend to persuade an adult to cause a minor to engage in unlawful sexual acts. And that's cited, that footnote in Murill and Hornaday. And that goes to this difference between Murill on the one side and height on the other side as to what the term induce means. Right, and that's on the wrong side in terms of height. Right, and we said arranging causing is not enough. Correct, and we agree that that's wrong in light of height. But I guess my point is that that wasn't obvious in 2010. Because if you look at Murill, Murill grappled with this. Murill is a great case, a great example of this, because in Murill, what was going on in Murill was two adults talking, and the one adult says, hey, for $300 I'll give you access to my kid. There's nothing regarding the child at all in that case. And so what Murill said, it went into the dictionary definition of the term induce. And the dictionary that it looked at included the term cause inside the concept of induce. That's what height disagreed with. And so what I'm saying is that, in response to Judge Tatel's question, is that wasn't obvious. That's not an obvious reading of the statute. The statute says, the words the statute uses, persuades, induces, entices, accourses, right? Correct, Your Honor. The district court said, all you have to do is, if the language is, arrange. Arrange is not any one of those words. Government must only prove the defendant believed he was communicating with anyone who could arrange for a child. That's what the district court said. Arrange is not one of those four words. Your Honor, arrange comes straight from Murill. Right, and that's the error. I'm not talking about Murill. I'm talking about the plain language of the statute. I guess we would respectfully disagree that that was obvious in light of the dictionary definition of the term induce. You think induce means arrange? Well, one of the dictionary definitions of the term induce is the concept of causing. So if you arrange for sex with a minor, you have caused that sex with a minor. And so that's how Murill gets to the end. By the way, the 11th Circuit stands by Murill in a case called Rutgerson from just last year. Maybe you didn't get it from my questions, but I don't really care what the other circuits said. My question is only based on the statute. You keep answering me by telling me what other circuits have said. My questions have been just looking at the plain language of the statute. Arrange is not one of those words. I agree that it's not one of the words. And I don't understand how anyone could look at it and think that's what those four words mean. Well, again, it goes back to, and we're not quarreling with the idea that these jury instructions would be error in light of height. We all agree with that. What I'm saying is that if you look at the way that induce, for example, was treated, and it wasn't overlooked, this was unpacked by the 11th Circuit. I'm not citing the 11th Circuit as precedent. I'm just demonstrating that. That's why it's not clear. But I think, Mr. Ewing, your argument presupposes that if you're zealous counsel for a defendant in a jurisdiction where there is no adverse precedent, and you look at this statute, the only reasonable conclusion you could come to is the conclusion that the 11th Circuit came to in Murill. And I think our question is, this is not a situation in which, as the district judge said, you don't have to be an effective prognosticator of a change in the law. But that reasoning really comes in a case, I think, in a context where there's adverse precedent, and one is implicitly demanding that counsel take issue with it. Here, there's an open field. There's an open field. There's no adverse precedent. Is there no argument that reasonable counsel objectively should have made for a narrower construction than the one that the 11th Circuit adopted? And counsel around the country, defense counsel around the country, were taking many different narrower views, from that of Judge Brown in Loris, which had been picked up by many defense counsel, from that that this Court ended up adopting in Haight, which is a little narrower. And so I think you're not taking on quite the challenge of your position, which is, would a reasonable defense counsel have objected to preserve the possibility that this Court, when it did reach the issue, would have taken a narrower view? Well, Your Honor, I guess on the deficiency prong of Strickland, the test, of course, is, were the errors so serious that counsel was not functioning as counsel? Just earlier this year in the Viner case, this Court talked about the doctrine of contemporary assessment, of how we're going to look at counsel's actions at the time that he took those actions. So in 2010... Yeah, but the statute in the Viner case was far more, was a complex statute. This one's not very complicated. Well, again, Your Honor, if we look back at 2010, what we have is a counsel who's looking at this circuit's case law. There's no precedent on point. There's nothing from the Supreme Court. There is precedent from one of the sister circuits, the Eleventh Circuit, which supports the jury instructions that were given. So it wasn't deficient performance to fail to raise. What this Court said in Lahrie's on direct appeal was a, quote, novel claim that Judge Brown initially raised in her dissent in Lahrie's. So it simply wasn't. We cite on page 32 of our brief. So was Fonte. Correct, Your Honor. And we cite on page 32 of our brief a whole raft of cases that say that it's not deficient performance to fail to anticipate a change in the law. And again, it's a change. Yes. I'm sorry. As I hear your answers, maybe I'm misunderstanding you. Judge Tatel is asking a different question. If the statute said inducement only means inducing a child, whether the adult is induced is totally irrelevant. And so the instruction is proposed a la Morel. And counsel doesn't object. And I know you want to argue the Eleventh Circuit and inducement. But, you know, this Court has said we weren't very impressed with the Eleventh Circuit. So that's not going to get you too far. But I'm just thinking about, as I understand what Judge Tatel is trying to get you to focus on. Is whether or not it was clear just from reading the statute. Obvious. Right. And I guess that's the part that I'm quarreling with. And the reason I'm quarreling with it, set aside Morel, I'm quarreling with it because of the dictionary definition of the term induce. So another way of looking at this is as one judge on the First Circuit wrote, it may be obvious, but it eluded judges. It eluded defense counsel. And we're finally waking up to it now. Sure. So that's the contemporaneous assessment of counsel's conduct? Well, yes, Your Honor, exactly. And this Court said something similar in the Hurd case. It said that it's unduly harsh. It would be unduly harsh to brand the bar to the inconfident for something that's eluded the bench. So I guess the argument, though, Judge Tatel can speak for himself, but I thought he asked you, you know, wouldn't you make an objection just so that when the case came to this Court, you wouldn't be facing a plain error standard? I guess, Your Honor, there was no basis to make that objection. Well, the District Court judge raised some mumblings about it. I know he came back and said, well, I guess, but. I think the District Court judge, Your Honor, was talking more along the lines of kind of the statute as a whole as opposed to the jury instructions. If I may, I see my time is running short. Can I actually ask you to focus on prejudice? Yes, Your Honor. If we did think that it was obvious that it was deficient under the first prong of Strickland, can we be confident that if the jury instruction had complied with height that the jury would nonetheless have convicted? We absolutely can, Your Honor. This defendant would have been convicted under a height instruction. Of course, height says you can persuade, induce, entice, coerce a minor through an adult intermediary so long as you're attempting to transform or overcome the will of the minor. So you look at some of the chats in Joint Appendix 341 through 344, and the direct object of a lot of these chats from lorries is the 9-year-old child. Joint Appendix 341, train the little girl. Make sure she wants to do it. Ha ha. Joint Appendix 342, could start with just letting me watch her and you tell she feels more comfortable. It's very odd, these locutions. Almost none of them have a subject. It's sort of train her. It's not saying who's going to do it. It's sort of an abstract idea. Well, and it's the, whether it's, I think it was Jim P. who he was referring to was the undercover. Train her. Make sure she wants to do it when I get involved. Quite unclear. Let me, well, here, this one's not unclear. Let me help with the little girl. So there's language in these chats that are the language of grooming, language of targeting the child as opposed to the adult intermediary. Mr. Young, what is, I know we announced the standard, you did not, but what is the difference between cause or range, which is not criminalized by 2422B, and persuade, induce, entice, or coerce, which is? Right. I think you're talking about regarding height. Yeah. Well, the difference, the distinction that height made, the problem that height had with the term induce was that with the surrounding verbs, it thought that it had to mean more than cause. Right. Right. So I understand that. So can you give me examples of something that would be a cause or a range that wouldn't be a persuade, induce, entice, or coerce? Well, I think the mural case is a perfect example, $300 to have access to your child. That's not, you're not attempting to transform or overcome the will of the child. You're not coercing her because you're getting her money? No, you're paying for guardian money. So here, when he says we want her to be comfortable until she feels comfortable, is there any coercion anticipated there? In fact, it seems like quite the contrary. Well, that's kind of the language of persuasion, though, right? Let's make you feel comfortable. I'd love to teach her to take two at once. So these are words, teach, train until she feels more comfortable. These are words of persuasion. These are words of enticement. Set aside, induce. I mean, this is way more than just causing this. This is what Haidt envisioned when Haidt said, you can persuade, induce, entice, coerce a minor through an adult intermediary. That's what we have here. You know, in defense of the way the district court put this and your position, this is a fictional underage child, right? Why shouldn't, wouldn't we want to interpret the language the way the district court did? In other words, any communication to arrange sex with an underage child, there shouldn't have to be inducement, or at least we shouldn't interpret inducement as requiring anything more than the district court did, namely arrange. Well, now we're talking about whether Haidt correctly decided or not. I mean, we would agree. I'm just asking you a theoretical question. Well, I mean, we believe Haidt was wrongly decided. We think the mural approach is correct. I see I'm running out of time. If I may switch to the Dr. Berlin issue. Well, I was going to ask you a question. You know, we spend a lot of time talking about words, and one of the experts was a linguist. Correct. And had he been called, while he may not have ever heard of the word pervout, he knows a lot about these words we're discussing, induce, cause, arrange, etc. And then you put Dr. Berlin on too to testify about fantasy, etc., and all these things. Prejudice? In other words, cumulative prejudice, which is what Appellant argues. Well, I guess take those one at a time. No, no, no. Specifically, I said we're talking about cumulative prejudice. Very well done. You said you're running out of time, so I'm going to focus this very clearly on the issue raised. Zero plus zero equals zero. No, not zero plus zero. We've spent, what, 20 minutes talking about words? Yes, Your Honor. All right, the district court talked about the difficulty of proof here and the problem with the statute itself. Did make some comments to that regard, yes, Your Honor, in the Rule 29 colloquy. Correct. I mean, I guess take Dr. Berlin for one. Dr. Berlin's potential testimony had a massive downside to Appellant. Dr. Berlin would have said that Appellant was a bisexual pedophile mainly attracted to prepubescent girls, that he did have the ability to form the specific intent necessary. I thought his diagnosis was bisexual. Bisexual pedophile predominantly attracted to prepubescent girls also had the specific intent of the ability to form the specific intent required for 2422. And despite being asked about six times between Joint Appendix 539 and 563 at the 2255 hearing, refused to say that these chats were, quote, fantasy only. That's right, but how could that be prejudicial compared with Mr. Lurie's testimony? I mean, surely if this were your son on trial, you would rather have Dr. Berlin testify to those facts than your son. Lurie admits he's a pedophile. He admits that he had near-overwhelming sexual urges. He's a sex addict. He also testified that he's not gay, but that basically he would settle for sex with adults who were available, including men, who would fantasize with him about setting up sexual encounters with girls. So he would do it. I think the case is that he would do it in a more professional way. He would do it in a way that was more accessible to the jury and that that would have been far less prejudicial than Mr. Lurie's rambles. I guess two responses to that are, first, appellant has not shown that he wouldn't have testified at trial. He simply has not shown that. Judge Lambert indicated there was a self-serving, quote, unquote, self-serving statement that was made during a colloquy about whether Lurie was a pedophile. I don't think you need to address that because Ms. Brody today admitted that he would have testified. She says her position is that he still would testify. Okay. So now where's the prejudice? I mean, that's still coming out. And how would Lurie's testimony have been somehow different if they would have been able to call Dr. Berlin? That's complete speculation. Well, the argument is, look, you have an attorney who may be well-trained, as your brief says, but he spends all this time on a theory and a diagnosis that he's come up with, and the expert in the field discourages him repeatedly. Then he's got another expert who really doesn't have any knowledge of the word that's at issue and whose basis of knowledge the district court, you know, questioned. And then you have this jury instruction. I mean, so how many errors do you need? Well, the jury instruction was not error. It wasn't efficient performance to fail to object to that. Well, how about the closing argument? What aspect of the closing argument, Your Honor? You only need to induce the adult. Well, I... Or at least to that effect. I confess to not having the closing argument at my fingertips, but I believe that was going back again to this concept of cause, that if you induce the adult to cause the sexual access to the child, then that's enough. I mean, that's how the jury was instructed. And, of course, juries are presumed to follow their instructions. Going back to Dr. Berlin, though, you know, the second part of my answer to Judge Pillard's question is, how is it better to have a nationally renowned doctor call someone a pedophile as opposed to him saying it himself? How is that better? It's not better. It's potentially worse. I mean, I think if Dr. Berlin had been called, we might be here talking about whether that was an effective assistance to call Dr. Berlin as a witness. I mean... Actually, our court has talked about how helpful Dr. Berlin's testimony can be, so I don't think that's a good argument to make. Well, that was in Haidt, I believe you're referencing, and that was quite different because if you look at what Dr. Berlin said about Haidt, Dr. Berlin was prepared to testify that Haidt was not a pedophile, that those were, in his view, those chats were probably fantasy. But this is where I think it's critically important, and the defense has pointed out that Detective Polchak testified to three categories, people who converse on the Internet with adults, pedophiles, who converse on the Internet with adults and talk about children, people who converse on the Internet with children or people posing or acting as children and talk about sex, and then the third category is people who want to go and have sex with children. And their theory, and Mr. Lurie's own theory about himself, is that he's actually in a category between Polchak's Category 2 and Category 3, which is people who want both the vivid fantasy about children, because, in fact, as he admits, he's attracted to children, and who want some hands-on sexual stimulation but do not want to violate the law, do not want to be victimizing children, and therefore he settles for the next best thing, which is encounters with strangers. That's the testimony, and that is less damning than a case in which he talks about his uncontrollable urges, and Polchak has set out these three categories, the only one of which involves action is incriminating, whereas I think Dr. Berlin would testify to a category that involves action, getting in your car to see Jim, that does not involve victimizing a child. So that's, I think, the core of their argument about prejudice. But then he would agree, Your Honor, that that is the one aspect that's potentially positive to Dr. Berlin's testimony. But I guess my point is that that's vastly outweighed by this negative downside. He would then be able to get crossed on, okay, well, this fourth category that you've laid out here, would that include someone who's already traveled in 2006 to meet who he thought was a 12-year-old child? Would it include that person? And what's interesting, too, if you want a little peek behind the corner as to what Dr. Berlin's testimony, his cross-examination would have looked like, look at his cross-examination at the 2255 hearing. From Joint Appendix 561 to 623, he's crossed, and what comes out? Multiple chats that the jury never even heard about between appellant lawyers and what appears to be a 14-year-old child, an actual child, not an undercover, a 16-year-old child, a 12-year-old boy. This would all have been fair game for Dr. Berlin on cross. So any minuscule upside to his testimony would have been vastly outweighed. But none of that being criminal under this statute. Well, but it goes to, I agree. I mean, where they're willing to rest their case is, yes, he's interested, but he has this clear line, you know, his victim's line, and that there is a difference. And so I think Dr. Berlin is the man for them in terms of making these categories. And they needed that, and they didn't have that because Dr. Berlin wasn't in the case. And you've articulated the one possible upside to Dr. Berlin's testimony. And I'm not quarreling with that. What I'm saying is that that's vastly outweighed by the downside of his testimony. And one thing that weakens the upside is that if you look at, for example, Joint Appendix 147, Detective Palchak never quarreled with the idea that some people are just into fantasy. He said that. He said, you know, some people are just into fantasy, and if we figure that out, we basically just help pursue it. Yeah, but he also said people tell you up front. And, of course, Dr. Berlin would have devastated that as well. Well, I think Dr. Berlin potentially would have contradicted that. That's what I mean. Detective Palchak was testifying based on his training and experience. And Dr. Berlin is testifying on his expertise, training, and experience. All right. So affirm, affirm, affirm. That's your order? Yes, Your Honor. We would ask that the judgment of the district court be affirmed. All right. Thank you very much. Counsel for Appellant? Okay. I will try to make this quick. I would just like to focus, again, on the prejudice to Mr. Lorre's from the improper jury instruction. One, we don't believe that a jury would have convicted Mr. Lorre's. As the government just explained, Mr. Lorre's said a lot of gross things in a lot of chats. And the words that he spoke to Mr. Palchak were also, we believe, fantasy. And under a proper jury instruction, where the jury was looking at Mr. Lorre's words and focusing on his words as they're geared toward the child, they would have acquitted. Also, it's not clear that those words taken for what they are are an attempt to induce or entice a child. Detective Palchak stated that he had a girlfriend who had a child he messed around with. It could have been a simple arranging. Reasonable inferences from the evidence that Judge Pillard has reviewed with you? Pardon? The jury's entitled to make reasonable inferences from the evidence that was before it. And I think Judge Pillard was exploring that with you earlier. Well, the third point that I would like to emphasize is that looking at height, where the statements that were made to Detective Palchak involved drugging a child, giving Benadryl, a peanut butter and jelly mix to a child, a 3-year-old, the court held that the jury instruction was highly prejudicial because there were grave doubts about whether the jury based its verdict on the proper construction of guilty purpose or intent and that a new trial was required. And here, where the jury was told time and time again, was there an attempt to persuade an adult, told by the government, told by the court, and even by trial counsel when he directly examined Mr. Lorre's, trial counsel asked, was there an attempt to persuade Detective Palchak? Ms. Ernie, I'm sorry. Go ahead. On the expert testimony, Dr. Berlin, there must be many cases in which a defendant wants a particular expert  if the expert is simply not available. That can't be ineffective assistance, can it? And why is that not just the situation here? As Judge Lamberth held in his opinion on ineffective assistance, he tried to get this expert when this expert was unavailable. It was a very, very busy schedule. He tried to get other experts, but he was just unable to get an expert. How can we hold that that's ineffective? So our argument is not that he was just unable to get an expert. He never asked Dr. Berlin for general clinical testimony. He developed his own legal theory, and he asked Dr. Berlin to back that up. And when Dr. Berlin couldn't back that up, which he couldn't because they didn't believe it and the stories could not form the specific intent, trial counsel was left with no one. But our argument is that he tried to pigeonhole the expert into a specific opinion. And because of that, he was not able to obtain an expert. So there's some miscommunication between the two of them. I think that trial counsel believed himself to be asking more general questions. Berlin is now saying, well, I didn't have anything on that, but I would have testified in this more general way. But we don't have any reason to believe that Berlin would have made himself promptly available within the time frame for the more general testimony, do we? Well, I think if we look at the record, starting with trial counsel's July 2009 letter to the court, his statements to the court in October of 2009 in the status conference, and again in February in 2010 at a status conference, trial counsel was always making representations that he was working toward a diminished capacity defense. I read Dr. Berlin's testimony in the hearing. Does he ever say, I misunderstood? Had I understood what trial counsel wanted, I would have been available within the time? What he says is that trial counsel asked him to provide a specific opinion that he could not support. But he doesn't say, had I understood that he wanted me to testify on the core of my actual expertise, I would have been timely available. I am not sure if he specifically says that. It's possible. I'm sorry. I can check and later brief the court if you would like. Anything further? No. One other point is that if Dr. Berlin could have provided some testimony, Judge Robertson would have continued the trial. So even if Dr. Berlin could not have been available in that time period, if he had been asked to perhaps provide general clinical testimony, that he could provide, Judge Robertson would likely have continued the case. He indicated that he would continue the case with some expert proffer. All right. Thank you. We will take the case under advisement.
judges: Rogers, Tatel, Pillard